Douglas B. DIZOGLIO, Appellant,

v.

Jesse BROWN, Secretary of Veterans Affairs, Appellee.

No. 94–1099.

United States Court of Veterans Appeals.

June 7, 1996.

Kenneth M. Carpenter and Kelly C. Brown, Topeka, KS, were on the brief, for appellant.

Mary Lou Keener, General Counsel; Ron Garvin, Assistant General Counsel; Adrienne Koerber, Deputy Assistant General Counsel; and Barbara J. Finsness, Washington, DC, were on the brief, for appellee.

Before KRAMER, FARLEY, and IVERS, Judges.

KRAMER, Judge:

The appellant, Douglas B. Dizoglio, appeals an August 10, 1994, decision of the Board of Veterans' Appeals (BVA) which denied entitlement to service connection for post-traumatic stress disorder (PTSD). On February 9, 1996, the appellant filed a motion for oral argument. The Court will deny that motion because the Court does not believe that "it will materially assist in the disposition of this appeal." *Winslow v. Brown*, 8 Vet.App. 469, 471 (1996). The Court has jurisdiction under 38 U.S.C. § 7252(a).

## I. FACTUAL AND PROCEDURAL BACKGROUND

The appellant had active military service with the U.S. Air Force from September 1968 to May 1972. Record (R.) at 23. From January 27, 1970, to July 18, 1970, he was a member of the 35th Tactical Fighter Wing located at the Phan Rang Air Base in Vietnam. R. at 23, 276. The appellant's DD 214 ("Armed Forces of the United States Report of Transfer or Discharge") lists his military occupational specialty (MOS) as administrative specialist. R. at 23. In this capacity, he was responsible for the maintenance and reporting of all flight records kept at the station, and for the keypunching of data input into the Standard Aerospace Vehicle and Equipment Report and Base Flight Management Data System. R. at 86, 276. Service medical records show that the appellant was treated on numerous occasions for allergic rhinitis and other allergies. R. at 29–44, 47–49, 54. (Rhinitis is inflammation of the nasal mucous membrane. STEDMAN'S MEDICAL DICTIONARY 1544 (26th ed.1995).) Both his enlistment and separation examinations were negative for any psychiatric disorders. R. at 25–28, 50–53.

The U.S. Army and Joint Services Environmental Support Group (ESG) provided a history of the 35th Tactical Fighter Wing from April. 1, 1970, to June 30, 1970 (R. at 93–123), and a summary of attack records for the various air bases maintained by the United States in Vietnam from January 1970 to November 1970 (R. at 90–92). According to these records, there were approximately 20 attacks made on the Phan Rang Air Base between January 27, 1970 and July 18, 1970, the period when the appellant was stationed at this base, and that as a result of these attacks, there were two enemy soldiers killed in action, one U.S. soldier killed in action, and eight U.S. soldiers wounded in action. R. at 90–92. In January 1974, the appellant filed a claim with a VA regional office (RO) for entitlement to service connection for residuals of hay fever, and in April 1974 the RO granted service connection for rhinitis

and assigned a 10% disability rating. R. at 132.

In November 1989, the appellant was first diagnosed with bipolar disorder with PTSD. R. at 138. Later that same month, he filed a claim with the RO for entitlement to service connection for PTSD. R. at 134. In a February 1990 VA hospital report, he was diagnosed with PTSD (R. at 137), and in a May 1990 VA psychiatric examination he was diagnosed with bipolar disorder, type II, and PTSD (R. at 143). In June 1990, a clinical psychologist noted that the appellant exhibited distinctive PTSD combat-related symptoms (R. at 145), and in a letter to VA received in June 1990, Edwin V. Sperr, Ph. D., director of a PTSD treatment unit, stated that the appellant suffered from severe and chronic PTSD associated with his experiences in Vietnam, and that his ability to obtain and maintain employment was severely impaired (R. at 148). In an August 1990 letter, George Zubowicz, M.D., a psychiatrist with a mental health clinic, stated that the appellant suffered from PTSD related to his war experiences and that he was totally vocationally disabled. R. at 188.

In August 1990, the RO denied the appellant's claim for entitlement to service connection for PTSD. R. at 158–60. In November 1990, Gwen Moddrell, M.D., found that the appellant had a "classical case" of combat-related PTSD. R. at 189. The appellant filed a Notice of Disagreement in January 1991 (R. at 162), and in March 1991 a statement regarding his Vietnam experiences. (R. at 172–79). In January 1992, the appellant filed an appeal to the BVA (R. at 194), and in February 1992, he testified at a BVA hearing as to his experiences in Vietnam (R. at 198–211). In March 1993, the BVA denied entitlement to service connection for PTSD. On appeal to the Court in May 1994, the Court granted the parties' joint motion for remand. R. at 4, 238.

In August 1994, the BVA, in its decision here on appeal, found that the appellant did not engage in combat and that the stressors he reported were not adequate to support a grant of service connection for PTSD. R. at 4–13. The appellant filed a timely appeal to the Court. In his brief, the appellant argued that he, in fact, had been "engaged in combat" while in Vietnam and that VA's definition of "combat" is too narrow. Appellant's Brief (Br.) at 21–31. Alternatively, the appellant argues that the claimed stressful events, even for noncombat veterans, are adequate to support a grant of service connection for PTSD. Appellant's Br. at 31–39. The appellant has cited several stressors related to his experiences in Vietnam that he believes support a diagnosis of PTSD. They include the following: (1) he had become friendly with pilots who did not return from their missions (R. at 173); (2) he had witnessed the death of a fellow soldier (named "Butch" or "Mac" of the Civil Engineering Squadron) from incoming fire just moments after he had waved to him (R. at 134–35, 176–77, 202); (3) he had been assigned to unload "body bags" from an Army truck as part of an Article 15, Uniform Code of Military Justice, non-judicial punishment (R. at 177–78, 203); (4) he had been assigned to gather bodies of dead enemy soldiers in order to "pile them up" for counting and intimidation purposes (R. at 174–75); (5) he had sustained a nose fracture as a result of being thrown into a wall by the concussion from a rocket explosion (R. at 134); and (6) he had experienced fear and lack of sleep from the numerous attacks made on the base (R. at 174, 202) [hereinafter referred to as "traumatic events"].

## II. ANALYSIS

In *Zarycki v. Brown,* 6 Vet.App. 91, 98 (1993), the Court held that the "reasons or bases" requirement and the statutory and regulatory provisions relating to PTSD claims adjudications require the BVA to "make specific findings of fact as to whether or not the veteran was engaged in combat with the enemy and, if so, whether the claimed stressor is related to such combat." Further, the BVA must provide an adequate statement of reasons or bases for such findings, including a clear analysis of the evidence which it finds persuasive or unpersuasive with respect to that issue. *See Gilbert v. Derwinski,* 1 Vet.App. 49, 57 (1990).

The factual findings made by the BVA in this case are subject to the "clearly

erroneous" standard of review. *See Swann v. Brown*, 5 Vet.App. 229, 232 (1993); *Wood v. Derwinski*, 1 Vet.App. 190, 192 (1991); *Gilbert*, 1 Vet.App. at 52–53. In determining whether a finding is clearly erroneous, "this Court is not permitted to substitute its judgment for that of the BVA on issue of material fact; if there is a 'plausible basis' in the record for the factual determinations of the BVA ... [the Court] cannot overturn them." *Gilbert*, 1 Vet.App. at 53.

■ In its August 1994 decision, the BVA determined, based on the appellant's MOS in Vietnam as an administrative specialist and the fact that he was not awarded any combat citations, badges, or decorations, that he had not engaged in combat with the enemy. However engagement in combat is not necessarily determined simply by reference to the existence or nonexistence of certain awards or MOSs. *See West v. Brown*, 7 Vet.App. 70, 76 (1994) ("Where it is determined, through the receipt of certain recognized military citations or *other supportive evidence,* that the veteran was engaged in combat with the enemy ..." (emphasis added)). Here, there is no dispute regarding the numerous documented attacks made on the Phan Rang Air Base during the period when the appellant was stationed on the base. Although the BVA did mention the attacks on Phan Rang Air Base, which were corroborated by the ESG, it does not appear to have taken them into account in concluding that the appellant did not engage in combat. Such "supporting evidence," *see West,* 7 Vet.App. at 76, must be considered and the resulting conclusion supported by the requisite statement of reasons or bases. *See Zarycki,* 6 Vet.App. at 98; *Gilbert,* 1 Vet.App. at 57.

■ Assuming that the BVA finds that the appellant did not engage in combat with the enemy, or that the appellant did engage in combat with the enemy but the claimed stressors are not related to such combat, the appellant's testimony, by itself, cannot, as a matter of law, establish the occurrence of a noncombat stressor. Instead, the record must contain evidence which corroborates the appellant's testimony as to the occurrence of the claimed stressor. 38 C.F.R. § 3.304(f) (1995); *see Doran v. Brown,* 6

Vet.App. 283, 289 (1994) ("[I]f the claimed stressor is not combat-related, [the] appellant's lay testimony regarding inservice stressors is insufficient to establish the occurrence of the stressor and must be corroborated by '*credible* supporting evidence.' [38 C.F.R. § 3.304(f) (emphasis added).] There is nothing in the statute or the regulations which provides that corroboration must, and can only, be found in the service records.... [T]hose service records which are available must support, i.e., must not contradict, the veteran's lay testimony concerning his non-combat-related stressors"); *compare* VA ADJUDICATION PROCEDURE MANUAL, M21–1, [hereinafter MANUAL M21–1] Part VI, ¶ 7.46(c) (March 17, 1995) (requiring "*any* evidence" be made part of the record to support the description of a stressful event (emphasis added)). The Court notes that the current MANUAL M21–1 provision adopted after the decision in *Doran,* which predicated its decision on 38 C.F.R. § 3.304(f), a regulation still in existence, does not appear to require that corroborating evidence be credible. Since this issue is not before the Court, however, it need not be addressed.

■ With respect to traumatic events (1), (3), (4), and (5), since there is no corroborating evidence in the record to support the appellant's contention that these events occurred, the BVA's determination that the appellant had not experienced an in-service stressor with respect to events (1), (3), (4), and (5) was plausible, and thus not clearly erroneous, again assuming that the stressors are not related to combat. *See* MANUAL M21–1, Part VI, ¶ 7.46(c) (1995); *Doran,* 6 Vet.App. at 289; *see also Swann,* 5 Vet.App. at 232; *Wood,* 1 Vet.App. at 192; *Gilbert,* 1 Vet.App. at 52–53.

■ With respect to whether the appellant had experienced a stressor associated with traumatic event (2), the Board determined that this event did not constitute an event sufficient to support a diagnosis of PTSD because the appellant was not exposed to " 'an event that is outside the range of usual human experience' " (*see* MANUAL M21–1, Part VI, ¶ 7.46(a)(1) (1995); *see also Zarycki,* 6 Vet.App. at 98–99) and then reasoned that "[t]he fact that soldiers and airmen [the ap-

pellant] knew were later killed in action is, sadly, all too common in the course of war." R. at 7. The relevant manual provision presently in effect, however, expands the "outside the range of usual human experience" test to include "seeing another person seriously injured or killed as the result of an accident or physical violence." MANUAL M21–1, Part VI, ¶ 7.46(a)(1). In this case, service records provided by the ESG list one U.S. serviceman killed in action during the time when the appellant was at the Phan Rang Air Base. R. at 90–92. There is no indication in the record, however, of any attempt to identify this person in an effort to verify the appellant's claim that a friend of his by the name of "Butch" or "Mac" with the Civil Engineering Squadron was killed by incoming fire just moments after the appellant waved to him. Because witnessing such an event constitutes a sufficient stressor as a matter of law, assuming that the BVA determines upon remand that the appellant did not engage in combat with the enemy, the duty to assist requires the BVA to attempt to corroborate this event by obtaining information regarding the identity of the U.S. serviceman killed in action while the appellant was stationed at the Phan Rang Air Base. *See* 38 U.S.C. § 5107(a) (where a claimant has submitted "evidence sufficient to justify a belief by a fair and impartial individual that the claim is well grounded," the Board has a duty to assist him in developing the facts pertinent to his claim); *see also* MANUAL M21–1, Part VI, ¶ 7.46(g)(3); Part III, ¶ 5.14.

In view of the foregoing, if the BVA finds either that the appellant engaged in combat and that there is "the absence of evidence to the contrary" (38 C.F.R. § 3.304(f)) that traumatic event (2) occurred, or that the appellant did not engage in combat but that traumatic event (2) occurred, the BVA shall reevaluate traumatic event (2) in accordance with the applicable provisions of the regulation and the MANUAL M21–1. *See e.g.*, 38 C.F.R. § 3.304(f) ("Service connection for [PTSD] requires . . . a link, established by medical evidence, between current symptomatology and the. claimed inservice stressor"); MANUAL M21–1, Part VI, ¶ 7.46(f) (1995) ("The examining psychiatrist or psychologist should comment on the presence or absence of other traumatic events and their relevance to the current symptoms").

Finally, with respect to traumatic event (6), the Board did not address whether the numerous documented attacks made on the Phan Rang Air Base while the appellant was stationed at the base constituted a stressor sufficient to support a diagnosis of PTSD and whether such stressor was causally related to his present symptomatology. Before making such a determination, however, in light of the foregoing regulation and MANUAL M21–1 provisions, the duty to assist requires the BVA to obtain a medical opinion as to both the stressor's sufficiency and its causal impact on the appellant's present symptomatology. *See* 38 C.F.R. § 3.304(f); MANUAL M21–1, Part VI, ¶ 7.46(f).

### III.  CONCLUSION

The August 10, 1994, BVA decision is AFFIRMED to the extent that the BVA determined that traumatic events (1), (3), (4), and (5) do not constitute sufficient noncombat stressors to support a diagnosis of PTSD. The BVA decision is otherwise VACATED and the matter is REMANDED to the BVA for further proceedings consistent with this decision. The appellant is free to submit additional evidence and argument on remand. *See Quarles v. Derwinski,* 3 Vet.App. 129, 140–41 (1992). The appellant's request for oral argument is denied.